UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ZACHARY S.,

Plaintiff,

v.

CASE NO. 1:25-cv-00331 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 8), Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 14), and Plaintiff's reply brief (Doc. 15). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Procedural Background

On April 4, 2022, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of November 1, 2020. (Tr. 109,

240-41.) Plaintiff's claim was denied initially and on reconsideration. (Tr. 123, 133.) He then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 142-43.) Plaintiff appeared with counsel for a hearing before ALJ Stephen Cordovani held on May 16, 2024. (Tr. 71-107.) On May 31, 2024, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 7-26.) Thereafter, the Appeals Council denied Plaintiff's request for review, (Tr. 1-6), and Plaintiff timely filed his appeal to this Court.

**B. Factual Background**[1]

Plaintiff was born February 5, 1995. (Tr. 108.) He completed high school and obtained a college degree. (Tr. 269.) He alleged his disabling conditions to include brain injury, severe chronic head pain, numerous concussions, migraines, sleep apnea, and anxiety. (Tr. 109.)

At the hearing, Plaintiff's counsel identified Plaintiff's headaches as the "main impairment," noting he has them almost every day. (Tr. 74.) Plaintiff noted that he experienced a head injury in 2012 while playing soccer that caused him to have headaches, but in the summer of 2020, he had another head injury at work that ultimately led to him filing for disability benefits. (Tr. 80, 89.) He described that he was injured but did work for a couple of months after the injury, ultimately being laid off when the company experienced financial difficulty. (Tr. 81.) He noted that, if the company were still open, he would be willing to try to continue working. (*Id.*)

Plaintiff testified as to his contributions around the house, where he lives with his girlfriend and two twin children. (Tr. 76.) He indicated that his girlfriend works a full-time job, Monday through Friday. (*Id.*) He noted that he does most of the cooking, half of the

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ. Other facts will be developed throughout the opinion as relevant to the Court's analysis.

laundry, drives the kids to and from school daily, takes himself to medical appointments, and participates in food shopping. (Tr. 77-78.) He also described a trip with his girlfriend and the kids to Disney, where they stayed for five or six days and visited two of the parks while also enjoying the resort. (Tr. 79.)

For fun, Plaintiff indicated that he spends time with his kids, noting they like to play outside and play video games. (Tr. 82-83.) He also described a card game he is trying to create and acknowledged that he plays Dungeons & Dragons online. (Tr. 83.) He was able to last in the game for an hour and a half or two. (*Id.*)

Plaintiff confirmed that he had a headache on the day of the hearing, noting he had good days and bad days. (Tr. 84.) He explained that, in a week, half of his days were good days with respect to headaches, but that he had a headache every day. (*Id.*) Plaintiff described a situation where the headache pain was so bad, he had to call his girlfriend to come home so she could care for the children, but he noted that happened almost a year before. (Tr. 86.) He explained that he takes a daily medication for his headache pain, and he identified two other medications that were for severe headaches, indicating he had taken one two weeks ago and the other about a month prior. (Tr. 87.) One medication, Cambia, brings his pain level from a nine or ten out of ten "down to that manageable seven." (Tr. 97.) He noted that, if he had to return to work, he would have to take breaks every hour or two for twenty to thirty minutes. (*Id.*)

A vocational expert (VE) also testified at the hearing. (Tr. 102.) In response to a hypothetical mirroring the ALJ's ultimate RFC, the VE identified three jobs: (1) marker, (2) router, and (3) photocopy-machine operator. (Tr. 104-105.) The ALJ then recognized

that certain limitations were not necessarily specific to the Dictionary of Occupational Titles (DOT):

> Q. Okay. Some aspects of the hypothetical are not necessarily specific to the DOT. And I'm thinking of overhead reaching, the bright lights discussion included in the hypothetical, the durations of interactions, assembly line work, team tandem work, all those things. How were you nonetheless able to reach your conclusion that these jobs would be available despite those inconsistencies?
>
> A. Those are done researching these jobs in the labor market.
>
> Q. And have you researched these specific jobs?
>
> A. Yes.
>
> Q. And you're familiar with the essential functions of the jobs?
>
> A. Yes.

(Tr. 105.) The VE also confirmed that the jobs are performed today how they are described in the DOT. (*Id.*) The VE further testified that one absence per month would be tolerated by an employer, and no more than three short, less than five-minute breaks would be tolerated beyond the two standard breaks allowed. (Tr. 106.)

### C. Medical Opinions

Plaintiff's treating provider, Physician's Assistant Sydney Grabau provided a medical source statement in March 2024. (Tr. 1147-53.) She opined that Plaintiff may need unscheduled breaks during the workday to rest in a dark/quiet room for 30-45 minutes. (Tr. 1151-52.) She opined that he could be capable of engaging in full-time competitive employment on a sustained basis "only in a low stress environment, or if the employer can accommodate frequent breaks or absences due to headaches/migraines." (Tr. 1152.) She recommended that Plaintiff avoid bright lights and strong odors. (*See id.*)

She recognized that he may experience good and bad days but could not assign a number of days per month this may occur. (*See id.*)

Consultative examiner Dr. Janine Ippolito evaluated Plaintiff in July 2022. (Tr. 762-66.) She found Plaintiff's attention and concentration to be intact, noting that he was "able to do the counting, simple calculations and serial subtraction tasks without errors." (Tr. 764.) She also noted that his recent and remote memory skills were "[i]mpaired due to problems focusing and difficulty with memory." (*Id.*) She concluded that Plaintiff:

> presents as able to understand, remember and apply simple directions and instructions, use reason and judgment to make work related decisions, interact adequately with supervisors, co-workers and the public, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire and demonstrate awareness of normal hazards and take appropriate precautions with no evidence of limitations. He has mild limitations in his ability to understand, remember and apply complex directions and instructions and sustain concentration and perform a task at a consistent pace. He has moderate limitations in his ability [to] regulation emotions, control behavior, and maintain well-bring. These limitations are due to his emotional distress.

(Tr. 765.)

In July 2020, consultative examiner Dr. Russell Lee concluded that Plaintiff was "limited from activities requiring prolonged exposure to bright light and loud noise." (Tr. 770-71.)

The agency reviewers also issued administrative findings. Dr. Roy-Petrick concluded that Plaintiff's mental impairments were not severe, (*see* Tr. 115), and Dr. Juriga found Plaintiff had the capacity to perform simple (routine, repetitive) work tasks, (Tr. 127). Dr. Miller found that, physically, Plaintiff could engage in all ranges of exertional work with environmental limitations, while Dr. Koenig limited Plaintiff to medium exertional work with reaching and environmental limitations. (*See* Tr. 117-19, 128-29.)

**D. ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 12.)

2. The claimant has not engaged in substantial gainful activity since November 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.). (Tr. 12.)

3. The claimant has the following severe impairments: migraine headaches; obstructive sleep apnea; post concussion syndrome; neurocognitive disorder; and adjustment disorder (20 CFR 404.1520(c)). (Tr. 12.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 13.)

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally overhead reach; no exposure to loud noise, flashing or bright lights, defined as light in great intensity than might be observed in normal office or retail setting; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; he can understand, remember and carry out simple instructions and tasks; can maintain attention, concentration and pace for simple unskilled work; able to work in a low stress work environment reflected by simple unskilled work, no supervisory duties, no independent decision-making, no strict production quotas as with assembly line work, minimal changes in work routine and processes; occasional interaction with supervisors, co-workers and the general public; and no team or tandem work. (Tr. 15.)

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565). (Tr. 19.)

7. The claimant was born on February 5, 1995 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). (Tr. 20.)

8. The claimant has at least a high school education (20 CFR 404.1564). (Tr. 20.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 20.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). (Tr. 20.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2020, through the date of this decision (20 CFR 404.1520(g)). (Tr. 21.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B. Standard to Determine Disability**

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff argues that remand is appropriate for several reasons. First, Plaintiff contends that the ALJ mischaracterized the evidence to conclude Plaintiff's treatment was "effective," that he had improved over time, and that he can engage in activities of daily living to the extent described by the ALJ. (Doc. 8-1 at 14-19.) Next, Plaintiff maintains the ALJ improperly evaluated the medical opinion of treating provider Sydney Grabau, PA, and thus, his RFC was not supported by substantial evidence. (*See id.* at 19-22.) Plaintiff also argues that the ALJ failed to assess the full functional impact of Plaintiff's migraines, particularly as it relates to absenteeism. (*See id.* at 22-27.) Finally, Plaintiff asserts that the ALJ failed to adequately resolve a conflict in the VE's testimony. (*See id.* at 27-29.)

### A. The ALJ Reasonably Characterized the Evidence, Which Satisfies the Substantial Evidence Standard to Support the RFC.

Plaintiff argues that, in formulating the RFC, the ALJ mischaracterized and cherry-picked the evidence to reach his conclusion that Plaintiff's treatment had been "relatively effective" and Plaintiff had shown "a trajectory of improvement over time." (Doc. 8-1 at 14-15.) Plaintiff also contends that the ALJ relied too much on Plaintiff's ability to engage in activities of daily living. (*See id.* at 17-18.)

As a preliminary matter, the regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding. 20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021). As such, the RFC conclusion "need not perfectly match any single medical opinion

in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78. Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

However, "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding." *Michelle J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00306 CJS, 2023 WL 2623587, at *4 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source") (citations omitted). "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022). However, "an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." *Regina M. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06629 EAW, 2025 WL 899008, at *3 (W.D.N.Y. Mar. 25, 2025) (*quoting Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022)) (quotations and citations omitted).

Having carefully reviewed the record, the Court notes ALJ Cordovani carefully detailed the evidence set forth in the record, including facts that may be viewed as supporting Plaintiff's claim for disability. (*See* Tr. 15-18.) Indeed, the ALJ expressly detailed Plaintiff's issues with migraine headaches, his various treatments, and his stated

difficulties. (*See* Tr. 16.) However, the ALJ also noted the generally stable results of neuro exams and his ability to work part time for thirty hours a week. (*See id.*) Nonetheless, the ALJ concluded that his RFC addressed these functional limitations. (*See* Tr. 17) ("I have accounted for the claimant's functional limitations associated with his migraine headaches and post-concussion syndrome in the RFC by limiting [him] to simple tasks to be performed in an environment with light exertional activities and environmental limitations.")

It is well settled that conflicts within the evidence are to be resolved by the ALJ, *see Veino*, 312 F.3d at 588, and once resolved by the ALJ, they cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in original) (citation omitted). Thus, the Court is plainly prohibited from re-weighing the evidence, which is what Plaintiff requests. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Simply put, Plaintiff's disagreement with the ALJ's resolution of conflicting evidence is not grounds for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.").

Plaintiff also challenges the ALJ's reliance on his daily activities, arguing that the ALJ characterized Plaintiff's abilities more favorable than actually reflected in the record. (*See* Doc. 8-1 at 17-18.) It is well-settled that an ALJ is permitted to consider activities of

daily living. *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (recognizing that "[t]he ALJ also relied on Cichocki's Daily Activities Questionnaire on which she indicated that she performed numerous daily tasks, such as walking her dogs and cleaning her house, that are consistent with a residual capacity to perform light work."). And Plaintiff acknowledged on several occasions that he was able to dress, bathe, and groom himself, as well as cook, clean, do laundry, shop, care for his girlfriend's children, and drive. (*See, e.g.*, Tr. 765, 769.) Again, while Plaintiff has identified a conflict in the evidence, it remains within the ALJ's purview to resolve the conflict. *See Veino*, 312 F.3d at 588.

Moreover, the Court finds there is "more than a mere scintilla" of evidence supporting the ALJ's RFC, including his resolution of conflicting evidence, and so the sufficient evidence standard has been satisfied. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (recognizing that "substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order).

Accordingly, the Court finds no error in the ALJ's evaluation or characterization of the record evidence.

**B. The ALJ Properly Evaluated the Medical Opinion of Treating Provider PA Grabau.**

Plaintiff next argues that the ALJ improperly assessed the opinion of PA Grabau, alleging that the ALJ did not adequately elaborate on the evidence supporting his determination that Plaintiff would not need unscheduled breaks nor his reasoning to

exclude absence limitations pertaining to Plaintiff's regular weekly migraines. (Doc. 8-1 at 20-21.)

With regard to an ALJ's consideration of medical opinion evidence, the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules"*), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, provide that the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source

opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

In his decision, the ALJ evaluated the opinion of treating physician assistant Grabau:

> Treating physician assistant Grabeau [sic] reported in a medical source statement dated the claimant is able to perform low stress jobs, but he would be precluded from performing even basic work activities while having a headaches. Further he concluded the claimant must take unscheduled breaks lasting up to 45 minutes to rest in a dark quiet room and avoid triggers such as bright lights and loud noises. Lastly Dr. Grabeau [sic] opined the claimant could work in a competitive manner, in a low stress environment **or** if the employer can accommodate frequent breaks or absences due to his headaches (19F). I find this opinion partially persuasive. The finding the claimant can work in a low stress environment is persuasive because it is supported by the evidence of record including the claimant's reports, he was looking for jobs on Indeed, take care of most of the household chores, drives the kids to and from school, cooks, cleans and plays online video games with friends. I have incorporated physician assistant Grabeau's [sic] findings in the above RFC. Physician assistant Grabeau's [sic] statement that the claimant needs unscheduled breaks lasting up to 45 minutes is not persuasive not supported by the evidence of record. There are no notes in the treatment records indicating the claimant takes frequent rests throughout his day. Moreover, this restriction was offered as an alternative.

(Tr. 18.)

While Plaintiff argues that the ALJ failed to offer a "clear explanation for rejecting portions of the opinion regarding good and bad days, attendance issues and the need for

breaks," (*see* Doc. 8-1 at 21), the Court disagrees. To the contrary, the ALJ stated that the opinion regarding unscheduled breaks was "not supported by the evidence of record," (*see* Tr. 18). The ALJ cannot cite evidence that does not exist. To the contrary, the record reflects that, while rest would help resolve Plaintiff's migraines, his functionality was not significantly interrupted by a headache or migraine. For example, Plaintiff testified that, while previously working, he could manage through his shift even with a headache, perhaps taking a break in his car during lunch. (*See* Tr. 96, 99.) He testified he had excellent attendance, missing only one or two days a month. (*See* Tr. 99.) He further testified that he had to ask his girlfriend to come home to care for the children, but that occurred only once in the past year. (Tr. 86.) Thus, while the record does reflect that resting may help resolve the migraine, this is different than requiring frequent rests throughout the day—which was the opinion of PA Grabau and which the ALJ rejected as unsupported by the record. Again, Plaintiff has identified a conflict in evidence, which was properly resolved by the ALJ. *See Veino*, 312 F.3d at 588.

Moreover, and most notably, the Court notes that PA Grabau's opinion was stated in the alternative. PA Grabau opined that Plaintiff could engage in full-time competitive employment "only in a low stress environment, **or** if the employer can accommodate frequent breaks or absences due to headaches/migraines." (Tr. 1152) (emphasis added). The ALJ accepted the first alternative and limited Plaintiff to low stress work. (*See* Tr. 18.) Thus, the ALJ did not reject this opinion, nor did he fail to account for Plaintiff's migraines. *See April W. v. Comm'r of Soc. Sec.,* No. 1:24-cv-00044-MAV, 2024 WL 4804778, at *5 (W.D.N.Y. Nov. 14, 2024) (recognizing that an ALJ "is free to reject portions of medical-

opinion evidence not supported by objective evidence") (quoting *Demeca P. v. Comm'r of Soc. Sec.,* No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024)).

The Court finds the ALJ's evaluation of PA Grabau's opinion satisfies the applicable standards and thus identifies no error.

**C. The ALJ's RFC Sufficiently Addressed Plaintiff's Headache Impairment.**

Next, Plaintiff contends that the ALJ's RFC fails to account for limitations for when Plaintiff experienced headaches and migraines—not just to prevent them. (Doc. 8-1 at 22.) Moreover, Plaintiff argues that the ALJ failed to explain how Plaintiff could maintain regular work attendance when he had five migraine days a month and, when he was working, he missed one to two days every month. (*See id.* at 24.)

The Court disagrees. While the Court acknowledges that Plaintiff experienced headaches and migraines consistently, the record does not support that Plaintiff was completely incapacitated during those days. This is true even though Plaintiff's headaches were recurring and episodic. As noted above, Plaintiff testified that, when he experienced migraines while working, he would either get through it, take a break in his car, or go home early. (*See* Tr. 96, 99.) Yet, he did not miss more than a day (or two at most) in a month. (*See* Tr. 99.) And no medical opinion opined that Plaintiff would be excessively absent from work so as to disqualify him from competitive employment. Indeed, even his treating provider opined he could handle low stress work—a limitation adopted by the ALJ. (*See* Tr. 1152.) Thus, in evaluating whether Plaintiff could engage in substantial gainful employment, it was reasonable for the ALJ to conclude that Plaintiff could work within the confines of the restrictive RFC formulated by the ALJ, even if Plaintiff did experience headaches or migraines. *See Prince v. Astrue,* 490 F. App'x 399, 400 (2d

Cir. 2013) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)) ("[D]isability require more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.").

Plaintiff has simply not shown he is *incapable* of performing such work, which is his burden. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (noting that a plaintiff has the burden to prove a more restrictive RFC). Therefore, the Court finds that the ALJ's RFC sufficiently addresses the functional limitations related to Plaintiff's headaches as supported by substantial evidence in the record.

**D. The ALJ Adequately Resolved Any Conflict Resulting from the VE's Testimony.**

Finally, Plaintiff contends that the ALJ did not adequately resolve a conflict between the VE's testimony and the DOT regarding reaching. (*See* Doc. 8-1 at 27-29.) Specifically, Plaintiff notes that the ALJ included a limitation to "occasional overhead reaching" while the jobs identified by the VE require "frequent" reaching. (*See id.* at 27.)

The ALJ's hypothetical presented to the VE included a limitation to "occasional overhead reaching," and in response, she identified three jobs: (1) marker, (2) router, and (3) photocopy-machine operator. (Tr. 104-105.) These jobs all require frequent reaching according to the DOT. *See* Marker, DICOT 209.587-034, 1991 WL 671802; Router, DICOT 222.587-038, 1991 WL 672123; Photocopying-machine Operator, DICOT 207.685-014, 1991 WL 671745.

At step five, the Commissioner has the burden to demonstrate that a claimant can perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. *See* 20 C.F.R. § 416.920(g). "Work

exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [Plaintiff is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b). If the ALJ chooses to rely on the testimony of a VE at this step five, the ALJ "must be alert to the possibility of 'apparent unresolved conflict[s]' between th[at] testimony and the [DOT]." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019) (quoting Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). That is, the ALJ has an "independent, affirmative obligation . . . to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [VE] if there is one." *Id.* at 94 (internal citation, quotation marks and alterations omitted). "When there is an apparent unresolved conflict between VE . . .evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR-004p, 2000 WL 1898704, at *2.[2] The Second Circuit later found that an ALJ properly relied on a VE's testimony after "specifically ask[ing] about both potential conflicts and the vocational expert provided an explanation that included an analysis based on his own expertise and labor market surveys he conducted." *Reilly v. Comm'r of Soc. Sec.*, No. 21-8-cv, 2022 WL 803316, at *2 (2d Cir. Mar. 17, 2022).

At the hearing, the ALJ specifically asked the VE how she reached her conclusion that these jobs would be available with limitations pertaining to "overhead reaching, the

[2] This Court is aware that on January 6, 2025, the Social Security Administration issued SSR 24-3p, "rescinding SSR 00-4p and [] no longer requir[ing] adjudicators to identify and resolve conflicts between occupational information provided by [vocational specialists] and [vocational experts] and information in the [DOT]." SSR 24-3p, available at https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html, (last visited June 2, 2026). However, this regulation does not apply retroactively. *Id.* at n.1.

bright lights discussion included in the hypothetical, the durations of interactions, assembly line work, team tandem work, all those things." (Tr.105) ("How were you nonetheless able to reach your conclusion that these jobs would be available despite those inconsistencies?") The VE confirmed she researched the specific jobs and was familiar with the essential functions of those jobs. (*See id.*)

This colloquy goes beyond the circumstances before the Second Circuit in *Lockwood*. In that case, the only question posed by the ALJ to that VE was whether the opinion was consistent with the DOT, to which the VE responded it was. *Lockwood*, 914 F.3d at 93. Here, the ALJ explored the basis for the opinion, confirming that the VE considered the reaching limitations for the specific positions she opined were available and that her opinion was sufficiently supported. As the ALJ recognized in his decision:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. However, the vocational expert also testified that where the DOT did not provide guidance or is inconsistent, the expert testified that she relied upon her experience to formulate an opinion, including her familiarity with the essential functions of the the [sic] three jobs she identified and how they are currently performed.

(Tr. 21.)

Several other decisions have found such an inquiry to be sufficient. *Barbara W. v. Comm'r of Soc. Sec.*, No. 1:22-cv-575-TPK, 2025 WL 276668, at * 6 (W.D.N.Y. Jan. 23, 2025) (finding that the ALJ sufficiently resolved the conflict between the DOT and the VE's testimony when the ALJ acknowledged the conflict and the expert provided testimony about why he believed the jobs did not require overhead reaching, which opinion was based on his experience with the jobs identified); *Jetaun C. R. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1489, 2022 WL 7085513, at *4 (W.D.N.Y. Oct. 12, 2022) (noting

that a VE is permitted to rely on his experience regarding job requirements when the DOT is silent and finding the ALJ obtained a reasonable explanation to the apparent conflict).

Therefore, the Court finds that the ALJ adequately resolved the apparent conflict regarding overhead reaching and concludes the ALJ's step five finding was supported by substantial evidence.

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: September 21, 2026
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge